## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| LINDA M. CYR,<br><br>*Plaintiff,*<br><br>v.<br><br>GENERAL MOTORS, LLC,<br><br>*Defendant.* | **Civil Action No. 18-** |

## PLAINTIFF'S COMPLAINT

COMES NOW, Linda M. Cyr (hereinafter referred to as "Plaintiff"), and respectfully files this Complaint against General Motors, LLC, (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

### I. Parties

1.    Plaintiff Linda Cyr is an individual and she resides in and is a citizen of Madawaska, Maine.

2.    Defendant General Motors, LLC is a Delaware limited liability company with its principal place of business in Michigan.  Its sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan.  General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation its principal place of business in Michigan.  Service of process upon this Defendant may be had by serving its registered agent for service, Corporate Service Company at 45 Memorial Circle, Augusta, Maine 04330.

## II. Jurisdiction

3.    This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

4.    The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Venue

5.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omission giving rise to the claims herein occurred in this District.

## IV. Facts

6.    On or about July 19, 2016, Lyn M. Cyr was riding in a 2014 Chevrolet Impala (VIN#2G1125S35E9293161) traveling southbound on Main Street/Route 1 in Van Buren, Maine. The Plaintiff's husband, Kenneth Cyr, was operating the subject vehicle.

7.    The subject vehicle was designed by Defendant.

8.    The subject vehicle was manufactured by Defendant.

9.    The subject vehicle was also assembled and tested by Defendant.

10.    As the subject vehicle traveled southbound on Main Street, a 2013 GMC Terrain, owned and operated by Linda Emond of Madawaska, Maine, was traveling northbound on Main Street.  Ms. Emond's vehicle crossed over into the

southbound lane, and although Mr. Cyr veered into the northbound lane to try to avoid a collision, the vehicles collided in the northbound lanes.

11. At the time of the accident, Linda M. Cyr was properly seated and properly wearing the available seat belt.

12. However, despite being properly seated and properly wearing the available seat belt, Linda M. Cyr sustained serious injuries when the vehicle failed to protect her because it violated several crashworthiness principles.

13. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world.  They are as follows:

    1.   Maintain survival space;

    2.   Provide proper restraint throughout the entire accident;

    3.   Prevent ejection;

    4.   Distribute and channel energy; and

    5.   Prevent post-crash fires.

14. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

15. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its

occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

16. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

17. Vehicle manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of an accident versus the cause of an injury.

18. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death **following** an accident through the use of a vehicle's various safety systems.

19. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

20. General Motors has stated in the past that, "The rich don't deserve to be safer … Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

21. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

22. Because every American has the right to a safe vehicle, because safety is

for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

23.   Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

24.   While there are minimum performance standards which an automaker is supposed to meet before selling a vehicle in the United States (the FMVSS), these minimum performance standards do not adequately protect the public.

25.   Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended by Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

26.   Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator". It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

## V. Strict Product Liability

27. Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 26 as though set out hereafter in full.

28. It was entirely foreseeable and well-known by, Defendant that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

29. The serious injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was in a defective condition, unreasonably dangerous to the user.

30. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

31. As detailed herein, the vehicle contains and/or Defendant General Motors, LLC has committed either design, manufacturing, marketing, assembly, and/or testing defects.

32. The defect(s) existed at the time Defendant General Motors, LLC sold the vehicle.

33. The vehicle reached the user without significant change in the condition in which it was sold.

34. The vehicle was being used in a manner reasonably foreseeable by the Defendant General Motors, LLC.

35. Defendant either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to Linda M. Cyr.

36. The design, manufacturing, marking, assembling, and/or testing defects by General Motors, LLC caused and contributed to Linda M. Cyr's serious injuries.

37. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. The vehicle failed to provide proper protection;

    b. The vehicle failed to provide proper protection in narrow, frontal offset, moderate offsets or oblique/angled impacts;

    c. The vehicle failed to utilize UHSS, AHSS, boron, martensite, ferrite, complex phase, dual phase or TRIP steel in the following areas: safety cage, cross bar, underbody, header, pillars, side rails, cant rails, door ring, occupant compartment zone, occupant survival space;

    d. The vehicle failed to utilize MPa rated steel in the safety cage area of at least 1100;

    e. The vehicle failed to properly channel, distribute and dissipate crash forces away from the safety cage;

    f. The vehicle failed to maintain the survival space;

    g. The vehicle failed to provide reasonable occupant protection;

    h. The vehicle was not properly subjected to narrow, moderate and oblique frontal offset testing;

      i. The vehicle was not subjected to crash testing with 95th percentile dummies in actual crash testing;

      j. The vehicle failed to utilize frontal offset countermeasures;

      k. The vehicle was not subjected to rigorous engineering analysis;

      l. The vehicle lacked safer alternative designs that other vehicle that cost even less utilize;

      m. The vehicle violated principles of crashworthiness;

      n. The vehicle's knee bag failed to act as a system with the structure and other restrain systems; and

      o. The defects and negligence were the producing, direct, substantial and proximate cause of the serious injuries and damages.

38.    The defects were a substantial, legal, proximate, and direct cause of the Plaintiff's injuries and damages.

WHEREFORE, Plaintiff demands judgment against the Defendant in an amount sufficient to fairly and reasonably compensate her for all past and future injuries and damages; plus Plaintiff's costs and interest thereon.

## VI. Negligence

39. Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 38 as though set out hereafter in full.

40. Defendant General Motors, LLC owed a duty of care to Plaintiff to design, manufacture, assemble, market, and/or test the subject vehicle in a reasonably safe and prudent manner.

41. Defendant breached its duty of care.

42. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death;

43. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

44. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

45. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

46. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

47. Based upon information and/or belief, Defendant either used or knew about advanced features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

48. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

49. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

50. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis was performed.

51. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

52. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

53. The foregoing acts and/or omissions, breach of duty, design and/or manufacturing defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of the Plaintiff's serious injuries and damages.

WHEREFORE, Plaintiff demands judgment against the Defendant in an amount sufficient to fairly and reasonably compensate her for all past and future damages; plus Plaintiff's costs and interest thereon.

## VII. Damages to Plaintiff

54. Plaintiff hereby re-states and re-alleges each and every allegation contained in paragraphs 1 – 53 herein as though set out hereafter in full.

55. As a direct and proximate result of the acts and/or omissions of Defendant, Linda M. Cyr has endured pain and suffering, impairment, mental anguish, emotional distress, disfigurement, interference with her daily activities

and a reduced capacity to enjoy life as a result of her injuries.

56.   As a direct and proximate result of the acts and/or omissions of Defendant, Linda M. Cyr has become obligated to pay extensive medical expenses as a result of her injuries.

57.   Therefore, as a direct and proximate result of Defendant's acts and omissions, Plaintiff seeks all elements of damages available to her under Maine and Federal Law, including, but not limited to: medical costs, both past and future; pain and suffering; extreme emotional distress and mental anguish; loss of enjoyment of life; and out of pocket expenses.

58.   The above and foregoing acts and/or omissions of the Defendant, resulting in the serious injuries to Linda M. Cyr, have caused actual damages to Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VIII. Prayer

59.   For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

    a.   actual damages;
    b.   economic and non-economic damages;
    c.   prejudgment and post-judgment interest beginning June 20, 2017;
    d.   costs of suit; and

e.   all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

DATED:  August 31, 2018

Respectfully submitted,

/s/ Blair A. Jones
Blair A. Jones, Esq.
State Bar No. 002257
bjones@joebornstein.com
**LAW OFFICES OF JOSEPH L. BORNSTEIN**
5 Moulton Street
P.O. Box 4686
Portland, ME  04112
(207) 772-4624 – Phone
(207) 523-5855 – Fax

and

**The TRACY firm**
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas  75235
Wendell P. Martens, Jr.
State Bar No. 24002528
CMartens@vehiclesafetyfirm.com
(214) 324-9000 – Phone
(972) 387-2205 – Fax
**Attorneys for Plaintiffs**