UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LINDA M. CYR, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:18-cv-00347-JCN |
| | ) |
| GENERAL MOTORS, LLC, | ) |
| | ) |
| Defendant | ) |

**ORDER ON MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

In this products liability action, Plaintiff seeks to recover for injuries resulting from an automobile collision, which she claims was caused by the Defendant's design, manufacture, and marketing of an unsafe automobile. (Complaint ¶¶ 29 – 30.)

The matter is before the Court on Defendant's motion for leave to file a third-party complaint against the driver of another vehicle involved in the collision. (ECF No. 15, hereinafter "Motion")

Following a review of the record and after consideration of the parties' arguments, I grant Defendant's motion.

**BACKGROUND**[1]

On July 19, 2016, Plaintiff was a passenger in a 2014 Chevrolet Impala operated by Plaintiff's husband and traveling southbound on Main Street/Route 1 in Van Buren, Maine. (Complaint ¶ 6.) Linda Emond was driving a 2013 GMC Terrain northbound and crossed

---

[1] The facts are drawn from Plaintiff's complaint and the supported and undisputed assertions in the parties' memoranda, which statements are taken as true for purposes of ruling on Defendant's motion.

into the southbound lane. (*Id.* ¶ 10.) Plaintiff's husband attempted to avoid a collision, but the vehicles collided in the northbound lane. (*Id.*) Plaintiff was injured in the collision. (*Id.* ¶¶ 55 – 57.)

On August 31, 2018, Plaintiff commenced this action against Defendant, alleging negligence and strict liability claims for the design, manufacture, marketing, assembly, and testing of the Impala. (*Id.* ¶¶ 27 – 53.) On December 19, 2018, Defendant filed the motion, seeking to join Ms. Emond as a third-party defendant. Plaintiff did not join Ms. Emond as a defendant because Plaintiff settled her claim against Ms. Emond on July 26, 2018. (Motion ¶ 6; Release of All Claims, ECF No. 22-1.)

## DISCUSSION

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The defending party seeking to assert a claim against a third-party must obtain leave of the court "if it files the third-party complaint more than 14 days after serving its original answer." *Id.* "In that event, the determination is left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 393 (1st Cir. 1999).

Because more than 14 days have elapsed, Defendant requires an order granting leave to file the proposed third-party complaint. Plaintiff argues that joining Ms. Emond as a third-party defendant is unnecessary because if the motion is granted, Ms. Emond would

be entitled to a dismissal of the claim pursuant to Maine's statutes governing tort claims involving multiple responsible parties, 14 M.R.S. §§ 156 and 163.

The Maine Law Court described the operation of Maine's comparative negligence statute, 14 M.R.S. § 156 as follows:

> Under the Maine Comparative Negligence Act, 14 M.R.S.A. § 156, a claimant whose injuries result partly from his own and partly from another's causative fault is not, by reason of the fact that the claimant's own fault contributed to his own injury, excluded from the recovery of some damages, unless such claimant is found by the jury to be equally at fault. But, if the claimant's causative fault is found to be less than the causative fault of the other party, then the damages recoverable in respect to the claimant's injury under such circumstances shall be reduced, so the statute says, from the total damages which would have been recoverable if the claimant had not been at fault "to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage."

*Jackson v. Frederick's Motor Inn*, 418 A.2d 168, 172 (Me. 1980).

Maine's comparative negligence statute also grants certain rights and procedures for "case[s] involving multiparty defendants." 14 M.R.S. § 156. "[E]ach defendant is jointly and severally liable . . . for the full amount of the plaintiff's damages," but "any defendant has the right . . . to request of the jury the percentage of fault contributed by each defendant." *Id.* "The comparative negligence statute, 14 M.R.S. § 156, requires the fact-finder to make two separate and distinct decisions: first, to determine liability, and second, to apportion the damages between [multiple] blameworthy parties in a just and equitable manner." *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 24, 960 A.2d 1188, 1195.

Another Maine statute codifies a tortfeasor's right of contribution from a joint tortfeasor and "provides an offset for a jury verdict against one tortfeasor when a second

joint tortfeasor settles before trial." *Hawkesworth v. Nationwide Mut. Ins. Co.*, No. 2:10-CV-232-GZS, 2011 WL 2471741, at *8 (D. Me. June 21, 2011).

> Whenever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury is not a bar to a subsequent action against the other person or persons also causing the injury.
>
> Evidence of settlement with a release of one or more persons causing the injury is not admissible at a subsequent trial against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

14 M.R.S. § 163.

In April 2000, the Maine Legislature amended § 156 and § 163 to "Validate Pierringer Releases in Multiparty Lawsuits." P.L. 2000, ch. 633. Pierringer releases are named for the case that first recognized them, *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963). One commentator explained the operation of a *Pierringer* release as follows:

> A plaintiff and a joint tortfeasor wish to settle a lawsuit. They have agreed to terms, but hesitate to conclude their bargain even though the law favors settlements. The plaintiff in settling with one joint tortfeasor does not want to run afoul of the rule that a release of one joint tortfeasor releases all colleagues in tort; plaintiff wishes to continue his suit against the non-settling joint tortfeasors. At the same time, the defendant who desires to settle wants to be quit of the lawsuit; he does not want to make his payment and still remain exposed to claims of contribution from the non-settling joint tortfeasors. The non-settling defendants, of course, would like to keep the settling defendant in the lawsuit. In trying to negotiate a settlement, this hazard, says Prosser, "has perhaps given more difficulty than any other problem."
> . . .
> In its simplest form, the Pierringer release (1) releases the settling defendant from the lawsuit and discharges a part of the cause of action equal to that part attributable to the settling joint tortfeasor's causal negligence, (2) reserves

4

> "the balance of the whole cause of action" against the nonsettling joint tortfeasors, and (3) contains an agreement whereby the plaintiff indemnifies the settling defendant from any claims of contribution made by the non-settling parties and agrees to satisfy any judgment he obtains from the non-settling tortfeasors to the extent the settling tortfeasor has been released.
>
> The Pierringer release reflects a modern common law approach to the problem of releases in situations of joint tort liability where liability may be apportioned. Giving effect to the intent of the parties to a settlement, it provides complete relief to a released joint tortfeasor. Just as important, it does not affect adversely the legal or equitable rights of the non-settling parties.

John E. Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L. Rev. 1 (1977); *see also Thurston v. 3K Kamper Ko., Inc.*, 482 A.2d 837, 839 n.1 (Me. 1984).

Before April 2000, Maine law only partially recognized *Pierringer* releases because courts would not dismiss settling defendants without the consent of nonsettling defendants. *See Lavoie v. Celotex Corp.*, 505 A.2d 481, 483 (Me. 1986). The statutory amendments of April 2000 addressed that limitation:

> If a defendant is released by the plaintiff under an agreement that precludes the plaintiff from collecting against remaining parties that portion of any damages attributable to the released defendant's share of responsibility, then the following rules apply.
>
> 1. General rule. The released defendant is entitled to be dismissed with prejudice from the case. The dismissal bars all related claims for contribution assertable by remaining parties against the released defendant.
>
> 2. Post-dismissal procedures. The trial court must preserve for the remaining parties a fair opportunity to adjudicate the liability of the released and dismissed defendant. Remaining parties may conduct discovery against a released and dismissed defendant and invoke evidentiary rules at trial as if the released and dismissed defendant were still a party.

> 3. Binding effect. To apportion responsibility in the pending action for claims that were included in the settlement and presented at trial, a finding on the issue of the released and dismissed defendant's liability binds all parties to the suit, but such a finding has no binding effect in other actions relating to other damage claims.

14 M.R.S. § 156.

> With regard to a settlement in which the plaintiff has entered into an agreement that precludes the plaintiff from collecting against remaining parties that portion of any damages attributable to the settling defendant's share of responsibility, the judge shall reduce the plaintiff's judgment by either the amount determined at trial to be attributable to the settling defendant's share of responsibility, if any was found, or, if no such finding is made, by the value of the consideration given to the plaintiff for the settlement.

*Id.* § 163.

Defendant contends Ms. Emond's joinder is necessary to protect Defendant's ability to assert its statutory rights to discovery, apportionment of liability, and a damages offset, even though Defendant concedes that Ms. Emond is immediately "entitled to be dismissed with prejudice from the case" under § 156(1). Defendant's interpretation of the statutes is derived from a technical or literal reading of the terms "defendant" and "dismissed." *See Defendant*, Black's Law Dictionary (10th ed. 2014) (defining "defendant" as an entity "sued in a civil proceeding or accused in a criminal proceeding"); Arlyn H. Weeks, *The Unsettling Effect of Maine Law on Settlement in Cases Involving Multiple Tortfeasors*, 48 Me. L. Rev. 77, 104 (1996) (noting that the use of the word "defendant" in § 156, rather than the broader terms "tortfeasor" or "person causing injury" found in §163, makes it "unclear" how § 156 applies when one or more joint tortfeasors are not named as defendants in the initial action). Plaintiff argues that the term "defendant" as used in § 156

and § 163 should be interpreted to include joint tortfeasors who choose to settle before the filing of a complaint, just as it undoubtedly includes joint tortfeasors who settle after a complaint is filed. Plaintiff's argument is not without merit.

The two statutes are not entirely consistent in their use of terms. Section 163, which is entitled "Release of joint tortfeasors," applies to "a person seek[ing] recovery," damage "caused by 2 or more persons," and the release of "persons causing the injury." The statute, however, later references "plaintiff" and "settling defendant" even though the "settlement" is evidently the same "settlement" that the preceding sentences describe as involving "one or more persons causing the injury."

Section 156 also presents some uncertainty when it refers to a settling entity as a "released and dismissed defendant," even though an entity is ordinarily not considered a "defendant" of any kind after that entity is "dismissed". *See e.g.*, *Hamilton v Bank of America Corp.*, No. CV-08-421, 2009 WL 558286 n.2-3 (Me. Super. Jan. 21, 2009) (dismissed entity "is no longer a defendant"); *Efstathiou v. Aspinquid, Inc.*, No. CIV. A. RE-05-046, 2005 WL 2727079, at *1 (Me. Super. July 19, 2005) ("First, without objection, the motion to dismiss . . . will be granted. He is no longer a defendant"); *Kling v. Fid. Mgmt. Tr. Co.*, 323 F. Supp. 2d 132, 148 (D. Mass. 2004) ([T]he Motion to Dismiss is GRANTED as to the Plan. The Plan is no longer a defendant, nominal or otherwise, in this action"); *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 688 n.3 (7th Cir. 2010) (same); *Webb v. Tedford*, 73 F. App'x 112, 113 (6th Cir. 2003) (same).

The legislature's use of the terms in this way is perhaps understandable given that when discussing these concepts, Maine courts sometimes refer to "defendants" and

"tortfeasors" flexibly or even interchangeably. *See e.g.*, *Thermos Co. v. Spence*, 1999 ME 129, ¶ 24, 735 A.2d 484, 490 ("As with the liability determination, it would make little sense to deprive a later-named defendant of the right to have a jury determine the respective responsibilities of the tortfeasors while allowing those named in the initial action access to a jury"); *Tibbetts v. Maine Bonding & Cas. Co.*, 618 A.2d 731, 734 n.4 (Me. 1992) (describing § 156, which only refers to "defendants," as providing for "comparative negligence of joint tortfeasors").

Plaintiff's interpretation is also arguably consistent with the legislature's intent to "Validate Pierringer Releases." P.L. 2000, ch. 633.

> The primary purpose in statutory interpretation is to give effect to the intent of the Legislature. We examine the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results. We also construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved.

*Cent. Maine Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262, 1266 (internal quotation marks and citations omitted). "The overall scheme and purpose of this section is undoubtedly to promote settlements in multiple-party tort cases . . ." *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 995 (Me. 1983). Interpreting § 156 and § 163 in a way that does not include individuals or entities that settle before a plaintiff files suit might reduce the incentive for parties to reach settlements promptly. Furthermore, an interpretation that requires parties to incur the time and expense of joining a party that has already settled, only to dismiss the party, does not appear to advance the legislative purpose of the statute. *See Fitanides v. City of Saco*, 2004 ME 32, ¶ 20, 843 A.2d 8, 15 ("Concluding

otherwise would elevate form over substance"); *Graffam v. Geronda*, 304 A.2d 76, 79 (Me. 1973) ("To hold otherwise . . . would be to elevate technical form to a position of superiority over substance").

A review of the language and purposes of the relevant statutes thus generates legitimate questions as to whether Maine law requires the joinder of Ms. Emond in order to preserve Defendant's rights under sections 156 and 163. Nevertheless, without a definitive ruling from the Maine Law Court, Defendant's concern is understandable. As discussed above, both sections 156 and 163 include references to "defendants" rather than "tortfeasors." Particularly where the joinder of Ms. Emond will result in relatively modest additional expense[2] and essentially no measurable delay in the resolution of the matter, to assure that Defendant has the ability to assert its rights under sections 156 and 163, the Court concludes the prudent way to proceed is to grant Defendant leave to assert the third-party complaint.[3]

## CONCLUSION

Based on the foregoing analysis, the Court grants Defendant's motion for leave to file a third-party complaint. Defendant shall file the third-party complaint within 7 days of the date of this order.

Dated this 14th day of March, 2019.

/s/ John C. Nivison
U.S. Magistrate Judge

---

[2] Because under 14 M.R.S. § 156(2), the parties would be able to obtain discovery from Ms. Emond even after she is dismissed from the case, the additional expense for Ms. Emond appears to be the expense incurred in connection with the preparation of a response to the third-party complaint and the process by which she would be dismissed in accordance with the parties' agreement.

[3] This District recently reached a similar conclusion in another case. *Albert v. Gen. Motors LLC*, No. 1:17-CV-00404-GZS, 2018 WL 3117633, at *4 (D. Me. June 24, 2018).